Samuel C. Straight (7638)
Arthur B. Berger (6490)
Thomas L. Lingard (16879)
RAY QUINNEY & NEBEKER P.C.
36 South State Street, Suite 1400
P.O. Box 45385
Salt Lake City, Utah  84145-0385
Telephone:  (801) 532-1500
sstraight@rqn.com
aberger@rqn.com
tlingard@rqn.com

*Attorneys for Defendants and Counterclaim
Plaintiffs Securion Systems, Inc. and Richard
J. Takahashi*

---

## UNITED STATES DISTRICT COURT, DISTRICT OF UTAH
## NORTHERN DIVISION

| | |
|---|---|
| PRO MARKETING SALES, INC., | **DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO ENFORCE SCHEDULING ORDER** |
| Plaintiff, | |
| v. | Case No. 1:19-CV-113 DBP |
| SECTURION SYSTEMS, INC. and RICHARD J. TAKAHASHI, | Magistrate Judge Dustin B. Pead |
| Defendants. | |

Defendants Securion Systems, Inc. and Richard J. Takahashi (collectively "Defendants")

respectfully submit the following opposition to Plaintiff Pro Marketing Sales, Inc.'s ("PMS")

Motion to Enforce Scheduling Order (Dkt No. 146) ("Motion").

### INTRODUCTION

Sections I.(H) and I.(I) of Defendants' Motion for Summary Judgment are directly relevant to the phase 1 issues before the Court. Among other things, the Phase 1 issues include PMS's standing, as well as whether Anan Nagarajan made inventive contributions to the Securion patents. PMS cannot satisfy its burden to show standing if the security agreement at issue does not attach to Securion and PMS does not have an ownership interest in the Securion patents. Moreover, Mr. Nagarajan cannot have made inventive contributions if his alleged contributions were in the public domain. The respective arguments in Sections I.(H) and I.(I) of Defendants' motion for summary judgment extend past the fact that Securion is not subject to security agreement and address the point that the Securion patents at issue have nothing to do with PMS's claimed TRSS technology or related property as well as the point that the portions of the TRSS technology allegedly used in the Securion patents are in any event in the public domain. Both issues are included in phase 1 as defined by the Court. PMS cannot establish standing to assert its ownership and inventorship claims if, as here, the patents at issue are unrelated to PMS's claimed technology and/or rely on material in the public domain. These sections are properly included in Defendants' pending motion for summary judgment. PMS's Motion should be denied and the Court should proceed to address Defendants' summary judgment motion in its entirety.

## BACKGROUND

1.      The Scheduling Order includes two phases of discovery. (Second Am. Scheduling Order at 2–3 (ECF No. 122).)

2.      The Scheduling Order provides: "Plaintiff's phase 1 discovery will be regarding (a) Inventorship as to the patents in suit (including Defendants' prosecution before the USPTO

and Defendant Takahashi's assignments to CSI and to Securion); (b) Efforts to commercialize the SKSIC/TRSS chip, the '119 patent, and the '330 patent; and (c) Activities of the parties relating to Priva and to CSI (including in connection with the bankruptcy, the License Agreement, the Western District of Michigan Litigation, the 6th Circuit litigation, and the Northern District of Georgia Litigation)." (*Id.* at 2.)

3.      It continues:  "Defendants' phase 1 discovery will be regarding (a) Plaintiff's standing to bring the claims it asserts in this action; and (b) Nagarajan's alleged inventive contributions to the Securion Patents." (*Id.*)

4.      "The discovery topics described in phase 1 above are mutual. In other words, Defendant may conduct discovery on Plaintiff's topics and Plaintiff may conduct discovery on Defendant's topics." (*Id.*)

5.      On June 17, 2022, Defendants filed a Motion for Summary Judgment on All Claims Regarding the Securion Patents (the "MSJ"). (Dkt No. 130.)

6.      Section I of the MSJ argues that "The Court Should Grant Summary Judgment for Defendants on PMS's Claims of Any Ownership Interest in the Securion Patents Because PMS Cannot Establish Ownership or Standing." (Dkt No. 130 at 28.) Subsection I.(H) argues that "The Securion Patents Have Nothing to Do with TRSS Technology or TRSS-Related Property." (*Id.* at 37.) Subsection I.(I) argues that "The Portions of TRSS Technology Allegedly Used in the Securion Patents Were in the Public Domain and therefore Free to Be Used." (*Id.* at 40.)

7.      Defendants stipulated to allow PMS two significant extensions of time to prepare its opposition to the MSJ. The original deadline for PMS's response was July 15, 2022. On July 20, 2022, the Court set and held a hearing on, and denied at the hearing, PMS's motion for

spoliation sanctions. PMS requested, and Defendants stipulated to, a first extension of time

extended the deadline for opposing summary judgment to August 12, 2022—several weeks after

the hearing date on the spoliation motion. (Dkt No. 139.) The second stipulated extension of time

further extended this deadline to August 31, 2022. (Dkt No. 143.)

8.      On August 2, 2022, shortly after stipulating to the second extension of time for

PMS's summary judgment opposition, PMS's counsel sent a letter to Defendants' counsel

requesting a meet and confer conference regarding sections I.(H) and I.(I) of Defendants' MSJ.

(August 2, 2022 Letter to Defendants, submitted as Exhibit 1). In its letter, PMS claimed that

these sections are "a merits question and not a standing question" and "go to the merits of

whether Pro Marketing has an ownership or co-ownership claim to the disputed patents." (*Id.*)

Therefore, in PMS's view, the arguments in these sections were outside phase 1.

9.      On August 8, 2022, Defendants responded to PMS's letter, arguing that sections

I.(H) and I.(I) are "directly within the scope of standing." (August 8 Letter to Plaintiff, submitted

as Exhibit 2.) Defendants further noted that "Plaintiff appears to still assert that the Securion

Patents use the SKSIC/TRSS technology. But Plaintiff's position is unclear because Plaintiff

refuses to provide an alternative definition of the SKSIC/TRSS technology with any

particularity. Indeed, Plaintiff's definition of the TRSS has been inconsistent throughout this

litigation." (*Id.*)

10.     In its August 2 letter, PMS's counsel also referred to a January 6, 2022 letter sent

to counsel for Defendants asking whether Defendants' phase 1 dispositive motions will include

"(from a factual perspective), whether the Securion Patents are improvements to the

SKSIC/TRSS technology." (January 6 Letter to Defendants, submitted as Exhibit 3.)

11.     On January 10, 2022, counsel for Defendants responded to the January 6, 2022 letter and stated:

> "We have at least two concerns as we try to address that question. First, PMS appears to have conceded that the Securion patents do not use the SKSIC/TRSS technology as that term was defined by the Western District of Michigan. Defendants believe this is an undisputed issue, and that in fact PMS was aware of that fact before filing the instant litigation. Thus, the question is a non-issue. Second, while Defendants do not anticipate affirmatively moving for summary judgment on the issue quoted above, Defendants do not know PMS's alternate definition of SKSIC/TRSS technology with any particularity, and thus how it may impact dispositive motion issues."

(January 10 Letter to Plaintiff, submitted as Exhibit 4.)

12.     PMS's definition of SKSIC/TRSS technology has remained a moving target – a changeling that morphs as circumstances apparently warrant, even to the point of expressly contradicting PMS's previous descriptions of that technology in this action. PMS alleges it is something other than the definition of that term adopted by the Western District of Michigan, and which ruling PMS chose to not appeal. Given PMS's position, whether the Securion patents use the TRSS technology under any definition is a live issue for the Court that includes standing, both as to ownership as well as Mr. Nagarajan's claimed inventive contributions, which are expressly phase 1 issues.

13.     On August 17, 2022, the parties held a meet and confer conference regarding the Motion. In this conference, the parties discussed whether they could stipulate to a definition of the TRSS, which would potentially resolve whether subsections I.(H) and I.(I) were within the scope of phase 1 standing. Counsel for PMS proposed a definition of the TRSS technology as the root of trust anchor in Phalanx, Blackstone, Darkstor, and Tall Bridge. However, the root of trust is a generic concept that long existed in the prior art. Nagarajan cannot have contributed, and

therefore PMS cannot claim ownership of the Secturion Patents, based on the generic non-inventive concept of root of trust. Defendants asserted their consistent position that the definition of TRSS technology from the Western District of Michigan should control. PMS refused to accept that definition. Accordingly, no agreement was reached.

## ARGUMENT

The Court should deny the Motion because the entirety of the MSJ is within the scope of phase 1 discovery. Phase 1 discovery is related to standing to bring the ownership and inventorship claims. Where a standing issue has gone beyond the pleadings to summary judgment or trial, "the plaintiff must do more than plead standing, he must prove it." *Glover River Org. v. U.S. Dept. of Interior*, 675 F.2d 251, 254 n. 3 (10th Cir.1982). To survive the MSJ and demonstrate standing, PMS "must come forward with **specific facts** to support its claim of ownership, and this evidence must be sufficient evidence for a reasonable fact-finder to infer that [PMS] holds title to the patent." *TM Pats., L.P. v. Int'l Bus. Machines Corp.*, 121 F. Supp. 2d 349, 367 (S.D.N.Y. 2000) (emphasis added). Thus, to establish standing to assert its regarding the Secturion Patents, PMS must provide specific facts supporting its claim of ownership. PMS cannot do so.

1. **PMS took discovery during phase 1 on the issue of whether the Secturion Patents are related to the TRSS technology.**

PMS acknowledged that the issue of whether the Secturion Patents are related to the TRSS technology is part of phase 1 of discovery when it took discovery on this very issue. For example, PMS's Interrogatory No. 26 to Takahashi asks "[d]escribe in detail the factual basis for Defendants' denial of paragraph 188 of the First Amended Complaint which states *'Denied. Defendants further deny that any of the Secturion Patents has anything to do with the*

*SKSIC/TRSS technology, incorporates SKSIC/TRSS technology and that Mr. Nagarajan made any inventive contribution whatsoever to the Securion patents.'"* (PMS Interrogatory No. 6 to Takahashi, submitted as Exhibit 5.) Paragraph 188 of the First Amended Complaint alleged: "Each of the Securion Patents contains at least one claim directed to systems, modules, architectures, methods and/or devices for performing security-relevant operations that utilize, implement and/or incorporate features and functionalities of the TRSS, including one or more of Mr. Nagarajan's inventive concepts of dual mode, secure selective zeroization, submode, and tamper interrupt, which inventive concepts are novel and non-obvious." (Dkt No. 49 at ¶ 88.)

This interrogatory is directly related to subsection I.(H) because it asks for clarification regarding Defendants' denial that the Securion Patents have anything to do with the TRSS technology or incorporate the TRSS technology. Thus, as demonstrated by PMS's own actions during phase 1 discovery, subsection I.(H) is within the scope of phase 1 discovery and therefore related to the threshold issue of standing.

## 2. Defendants' arguments in subsections I.(H) and I.(I) reach the threshold issues of the relatedness of the TRSS technology to the Securion Patents and the inventiveness of the alleged inventive concepts of the TRSS technology.

Plaintiff argues that subsections I.(H) and I.(I) "go[] to the merits of whether the Securion Patents are improvements to the TRSS." (Mot. at 5.) Meaning, even if PMS could get past the fact that Securion was never a party to the security agreement, or in fact any contract with PMS, PMS would still lose on the standing question.[1] Regarding subsection I.(H), PMS's argument assumes that the Securion Patents are related to the TRSS technology because, for the

---

[1] If the Court finds that the security agreement did not reach Securion sections I.(H) and I.(I) would be moot as to standing, but still would related to whether Nagrajan is a co-inventor under applicable case law.

Securion Patents to be improvements on the TRSS technology, the two technologies must be related.[2] Plaintiff needs to satisfy the threshold showing that the Securion Patents include subject matter that is  covered by the security agreement, as interpreted by the court in the Western District of Michigan. At this stage, PMS must do more than simply plead that the Securion Patents are covered by the security agreement, but instead must show specific facts regarding their relationship. It is not enough to simply provide a conclusory statement that, because both the Securion Patents and the TRSS technology deal with cryptography and Takahashi worked on the TRSS technology, they are sufficiently related to satisfy the threshold for standing. Subsection I.(H) argues that PMS has not and cannot show any relation between the TRSS technology and the asserted claims in the Securion Patents. This failure means that PMS has no standing to assert its ownership claims. Therefore subsection I.(H) is within the bounds of phase 1 discovery.

Subsection I.(I) relates to the threshold issue of whether the allegedly inventive concepts of the TRSS technology are actually inventive. If these concepts are known in the prior art, then Mr. Nagarajan cannot be an inventor and the security agreement does not extend to those non-inventive concepts, as explained by the court in the Western District of Michigan. This subsection argues that the allegedly inventive concepts are simply not inventive. If there are no

---

[2] The Western District of Michigan made clear: "When discussing Pro Marketing's rights in the modifications which would become the TRSS technology, both this Court and the Court of Appeals assumed that these **modifications were created entirely by Priva.** . . . Pro Marketing now seeks to broaden the scope of the collateral, and hence the scope of the Court's judgment, to TRSS-related property created by Cyber Solutions. But Cyber Solutions was not party to the Security Agreement. **That agreement does not prohibit Cyber Solutions from making modifications to the Technology, nor does it give Pro Marketing a security interest in modifications created by Cyber Solutions (or, for that matter, by any other non-party to the agreement).** *Cyber Solutions International, LLC v. Priva Security Corp et al.,* No. 1:13-CV-867, Dkt. No. 75 (W.D. Mich. 2016) at 9-10 (emphasis added).

inventive concepts in TRSS, then Nagarajan cannot be an inventor.  Further, PMS has no

standing to assert any claim that such concepts entitle PMS to ownership of the Secturion patents

insofar as the security . Therefore, subsection I.(I) is within the bounds of phase 1 discovery.

It is worth noting that, with this Motion, PMS seeks to expand the scope of this litigation.

PMS argues that

> "Defendants have limited their disclosures to certain 'asserted claims' relating to
> the co-inventorship claims and conditioned their disclosures on limited definitions
> and understandings of TRSS Technology at this stage of the litigation. Therefore,
> Defendants have not disclosed all systems, devices, methods, or processes known
> to be covered by any claim of the Secturion Patents. Allowing Defendants to
> move for summary judgment on Phase 2 improvement claims under the current
> Scheduling Order without requiring Defendants to fully disclose all systems,
> devices, methods, or processes known to be covered by any claim of the Secturion
> Patents violates the fundamental principle of fairness that governs discovery."

(Mot. at 4–5.) As stated in the MSJ, "[i]n response to the Court's partial grant of Defendants'

Motion to Dismiss, PMS filed its First Amended Complaint, which identified the specific patent

claims at issue in this action. PMS asserted that Nagarajan contributed to the invention of" the

asserted claims described in the First Amended Complaint. (Dkt No. 130 at 54.) PMS never

otherwise identified or provided any specific facts regarding which claims of the Secturion

Patents were directed to the alleged improvements to the TRSS. Therefore, the only claims at

issue for inventorship or ownership of the Secturion Patents are these asserted claims in the First

Amended Complaint that the Court required PMS to include.

PMS is now attempting to expand the scope of the First Amended Complaint to include

any claim of the Secturion Patents. But PMS only describes the alleged improvements to the

Secturion Patents in terms of the alleged inventive concepts developed by Nagarajan. (*See e.g.*,

Dkt No. 49 at ¶ 166–186). Indeed, the only claims of the Secturion Patents that are even

mentioned in the First Amended Complaint (but not discussed in detail in the First Amended Complaint or any other Plaintiff-produced document in this litigation, as outlined in the MSJ) are the asserted claims. Therefore, PMS's ownership claims are limited in both phase 1 and phase 2 to the asserted claims described in the First Amended Complaint. Moreover, systems or devices that may or may not practice the asserted claims of the patents at issue are entirely irrelevant to the inventorship and ownership analysis. (*See e.g.*, *Trovan, Ltd. v. Sokymat SA, Irori*, 299 F.3d 1292, 1302 (Fed. Cir. 2002).) PMS must prove that it owns the ***patents*** and that Nagarajan is a co-inventor of the ***patents***. Whether a device may or may not practice the patents is entirely irrelevant to PMS's claims in this case.

###### 3.   The definition of the TRSS technology is critical to the threshold issues of whether the TRSS technology is related to the Secturion Patents and whether the allegedly inventive concepts are inventive, and PMS has not provided a consistent definition of the TRSS technology in this or other litigations

As stated in the MSJ, "[t]his case involves alleged rights that PMS has arising from its 2013 seizure of certain assets held by Priva Technologies." (Dkt No. 130 at 7.) These assets relate to the TRSS technology. But throughout all of the litigations related to the TRSS technology, PMS has refused to provide and stick to a single definition of the TRSS technology. Defendants maintain that the definition of the TRSS was accurately articulated by the Western District of Michigan, and that the TRSS technology is the material "created entirely by Priva." (*See* Case 1:13-cv-00867-RHB Dkt. No. 75 at 6.) PMS has refused to agree with this definition or to provide a consistent alternate definition.

The definition of the TRSS technology is critical to the threshold issue of standing. If the TRSS technology is defined such that it is unrelated to the Secturion Patents, then PMS does not

have standing to claim ownership of the Securion Patents under their theory of the bankruptcy collateral.

The Western District of Michigan defined TRSS Technology to be the improvements made by the secured creditor, Priva. The Western District of Michigan held that PMS's security interest lien did not extend outside Priva to improvements made to non-parties to PMS's security agreement. (*See id*. at 9-10.) Not only did PMS not appeal this definition, it was the definition PMS urged in that Court. If TRSS Technology is that which was defined before the Western District of Michigan, PMS's security agreement with Priva cannot extend to Securion and thus PMS has no standing.

When PMS asked Defendants if they would include in a summary judgment motion, "(from a factual perspective), whether the Securion Patents are improvements to the SKSIC/TRSS technology," Defendants responded that they did not know PMS's definition of the TRSS technology with any particularity, and therefore could not know how it would impact a motion for Summary Judgment. Defendants still do not know PMS's definition of the TRSS technology with any particularity, as the definition has changed throughout this and prior litigations. For example, during the hearing on the Motion to Dismiss, PMS characterized the TRSS technology as "100 percent [different from the SKSIC]. It's a different technology. . . . Just as different as the next James Bond movie is from Goldfinger." (April 14, 2021 Motion to Dismiss Transcript at 51:5–11, submitted as Exhibit 6.) However, in sworn deposition testimony, Mr. Nagarajan confirmed that "95 to 98 percent of the TRSS is the SKSIC." (2022 Nagarajan Dep. at 68: 15–20, submitted as Exhibit 7.)

Further, in PMS's response to Defendants' Interrogatory No. 5, PMS first referred to the "ICDs, Application Notes, and SKSIC/TRSS white papers as well as the First Amended Complaint." (Plaintiff's Second Supplemental Responses to Phase 1 Discovery Requests, submitted as Exhibit 8.) PMS supplemented this definition using the description of the SKSIC in the "License Agreement between Priva and CSI." (*Id.*) PMS further supplemented this definition using descriptions of "Priva's Secured Key Storage Integrated Circuit ("SKSIC") technology." (*Id.*) If the TRSS technology and the SKSIC are "as different as other James Bond movies from Goldfinger," then PMS's definition of the TRSS technology based on a definition of the SKSIC contradicts the definition it provided in the hearing on the Motion to Dismiss. Regardless, if the TRSS technology is defined using the SKSIC, then subsection I.(I), which argues that the TRSS technology is part of the public domain (e.g., determining whether the previously published SKSIC is prior art to the TRSS technology), goes directly to the core phase 1 issues of standing and inventorship because PMS cannot have standing based on, nor could Nagarajan have invented, technology in the public domain.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny the Motion and consider the MSJ in its entirety, including subsections I.(H) and I.(I).

DATED: September 7, 2022

RAY QUINNEY & NEBEKER P.C.


*/s/ Sam Straight*
Samuel C. Straight
Arthur B. Berger
Thomas L. Lingard

*Attorneys for Defendants and Counterclaim
  Plaintiffs Securion Systems, Inc. and
  Richard J. Takahashi*

## CERTIFICATE OF SERVICE

I hereby certify that on September 7, 2022, a copy of the foregoing **DEFENDANTS'**

**OPPOSITION TO PLAINTIFF'S MOTION TO ENFORCE SCHEDULING ORDER** was

electronically filed with the CM/ECF system of the U.S. District Court for the District of Utah

and sent via email to the following counsel of record:

Amy F. Sorenson
Zaven A. Sargsian
SNELL & WILMER L.L.P.
15 West South Temple
Suite 1200
Gateway Tower West
Salt Lake City, Utah 84101
Telephone: 801.257.1900
Facsimile: 801.257.1800
Email: asorenson@swlaw.com
zsargsian@swlaw.com

Erik H. Olson
Georgia Bar No. 553098
THE OLSON LAW FIRM, LLC
6100 Lake Forrest Drive, Suite 570
Atlanta, Georgia 30328
Telephone: 404.897.1014
Facsimile: 404.255.0183
Email: erikholson@theolsonlawfirm.com

Michael J. Powell
Georgia Bar No. 586275
POWELL IP LAW, LLC
10 Glenlake Parkway, Suite 130
Atlanta, Georgia 30328
Telephone: 678.222.3444
Email: mjp@navigatingip.com

*/s/ Brandy Sears*

## INDEX OF EXHIBITS

| EXHIBIT | DESCRIPTION |
| --- | --- |
| 1 | August 2, 2022 Letter to Defendants |
| 2 | August 8, 2022 Letter to Plaintiff |
| 3 | January 6, 2022 Letter to Defendants |
| 4 | January 10, 2022 Letter to Plaintiff |
| 5 | PMS Interrogatory No. 26 to Takahashi |
| 6 | April 14, 2021 Motion to Dismiss Transcript at 51:5–11 |
| 7 | 2022 Nagarajan Dep. at 68: 15–20 |
| 8 | Plaintiff's Second Supplemental Responses to Phase 1 Discovery Requests |